## WILLIAM DAVIS *v.* THE STATE.

1. POISONING — INDICTMENT. — Article 537 of the Penal Code defines two distinct offenses by poisoning: the first being when "any person shall mingle any poison, or other noxious potion or substance, with any drink, food, or medicine, with intent to kill or injure any other person;" and the second, when "any person shall willfully poison any spring, well, cistern, or reservoir of water, with such intent." Indictments for the first of these offenses need not allege that the act was "willfully" done, as is necessary in charging the second.

2. VERDICT. — When the penalty assessed is within the limits prescribed by law, and nothing indicates that the jury were improperly influenced in assessing it, the verdict will not be disturbed by this court on account of excess.

APPEAL from the District Court of Kinney. Tried below before the Hon. T. M. PASCHAL.

Mrs. Terrell conducted a boarding-house in the town of

Brackett, Kinney County, and from it supplied meals to Joe Van Wie and his family, domiciled at some distance, and comprising Van Wie and Mrs. Van Wie, and two other ladies.

On the morning of May 4, 1878, the appellant, who was not an employee of Mrs. Terrell, volunteered his services to carry the coffee-pot, and did so for a distance of some sixty yards, following one Johnson, a servant, who had the rest of the breakfast for Van Wie and his family. Johnson testified that on their way the appellant called to him to stop and take the coffee-pot, and, on witness' stopping, the appellant came up with it, but, before handing it to the witness, raised the lid for some purpose, and appellant noticed grease floating on the coffee. Witness took it and the rest of the breakfast to Van Wie's, and put it on the table.

Van Wie and the ladies proved the condition in which they found their coffee, having detected it by taste and appearance before they imbibed enough of it to do any harm. One of them had had some experience with croton oil, and, having tested the coffee by taste and smell, was confident that the grease floating on it was that oil. Mrs. Terrell's attention was immediately called to it, and she forthwith submitted the vessel and its contents to Dr. Patrick, a resident druggist and physician, who pronounced the grease to be croton oil, and who testified that there was enough of it in the pot to have killed or seriously injured three or four persons.

Van Wie set out to trace up the matter, and the appellant at first denied to him that he had had anything to do with the coffee-pot, but said he had carried the tea-pot a part of the way. When confronted with Johnson, however, he did not deny carrying the coffee-pot.

Mrs. Terrell and her staff were very positive that the coffee was all right when confided to Davis, the appellant,

who, it seems, was an occasional resorter to the kitchen, but had never before tendered his assistance. What the motive or object was is not distinctly in proof, as no animosity to Van Wie or his family, on the part of the accused, or of any of those who handled the coffee, was known. Van Wie, however, on his cross-examination, testified that he believed the accused " had been put up to it by other parties."

The opinion of this court sets forth the charging part of the indictment, and such other matters as it treats of.

No brief for the appellant.

*George McCormick,* Assistant Attorney-General, for the State.

WINKLER, J. The first question to be considered is the sufficiency of the indictment, which is called in question by a motion in arrest of judgment.

The charging part of the indictment is " that William Davis, on the fourth day of the month of May, in the year of our Lord one thousand eight hundred and seventy-eight, in said county of Kinney and state of Texas, did then and there, willfully, maliciously, and feloniously, mix and mingle a certain poison, to wit, a poison known as croton oil, with a certain drink, to wit, a drink known as coffee, with the willful, malicious, and felonious intent then and there, on the part of the said William Davis, to injure Joe Van Wie," and certain other named persons.

Article 537 of the Penal Code (Pasc. Dig., art. 2198) creates two separate offenses, of which one is constituted by the following language, to wit: " If any person shall mingle any poison, or other noxious potion or substance, with any drink, food, or medicine, with intent to kill or injure any other person," etc. The other is set out in these words, the first portion of the article applying to each: " If any person shall willfully poison any spring, well, cistern, or

reservoir of water, with such intent " — *i. e.*, with intent to kill or injure any other person. The offender, in either case, " shall be punished by imprisonment in the penitentiary not less than two nor more than ten years.'

This indictment intends to charge the offense set out in the first portion of the article. By comparing the charge in the indictment with the offense set out in the statute, it will be seen that the pleader has described the offense with even greater particularity than the statute requires. It was not necessary, as in case of poisoning a spring, etc., to charge that the offense was committed willfully, but only that the act was done, and the intent with which it was done. The indictment is not defective, and the court did not err in overruling the motion in arrest of judgment.

Three bills of exception are set out in the transcript. No. 1 complains that the court erred in permitting evidence to go to the jury as to what would be the effect of croton oil in large quantities; in which we find no error. No. 2 complains of error in overruling the defendant's motion for a new trial — hereafter to be considered. No. 3 relates to the supposed error in overruling the motion in arrest of judgment, and in which we have seen there was no error.

As to bill of exceptions No. 2, and the motion for a new trial, the first, second, third, fourth, fifth, and sixth grounds set out in the motion for a new trial relate to the different portions of the charge, and are, we deem it, untenable. The seventh ground is that the verdict of the jury is excessive. The penalty imposed being confinement in the penitentiary for a period of five years, and that being but half the maximum imposed by law, was clearly within the discretionary power given to the jury. They having determined from the evidence that he was guilty, and there being no mitigating circumstances shown, nor anything to indicate that the jury were improperly influenced in affixing the amount of punishment within the limits of the law, the find-

ing should not be set aside, on appeal, on the ground of excess.

The sixth and last ground in the motion for a new trial is that the verdict of the jury is not supported by the law or the evidence. Upon the whole, we are of opinion that both the law as given by the court in charge to the jury and the evidence adduced warranted the verdict.

The following instructions were asked by the defendant, and refused by the court, to wit:

" 1. You must believe from the evidence, beyond a reasonable doubt, that the defendant, and no other person, mingled croton oil with coffee with intent to injure as alleged in the indictment, before you can find the defendant guilty as charged.

" 2. You must believe beyond a reasonable doubt, if you find croton oil is poison, that defendant mingled said oil with coffee with intent to injure as alleged in the indictment, before you can find defendant guilty as charged.

" 3. You must believe from all the evidence, taken together, that the defendant, and no other person, put said croton oil in the coffee, with intent to injure the parties alleged ; and if you have a reasonable doubt of that fact you will acquit."

Of these, the judge says they were " refused because embodied in the general charge."

We are of opinion that the charges refused embraced no .principle of law applicable to the facts proved which was not embraced in the general charge.   On the contrary, the law of the case was given to the jury in a full, clear, fair, and impartial manner, in which the question of the guilt or innocence of the accused was left to the jury, and the facts necessary to be given in order to warrant a conviction were plainly stated, and in a manner not calculated to confuse or mislead.

The jury was told, among other things, with regard to

circumstantial testimony, that "circumstantial evidence is, or may be, as convincing in establishing guilt as direct or positive testimony; it is a requisite of this testimony, when a conviction is sought under it, that it should exclude every other reasonable hypothesis consistent with the innocence of the defendant, and also that each link in the chain of circumstances, if established by circumstances, should be established by the same character of testimony as the main fact sought to be established, and that they should lead, on the whole, to a satisfactory conclusion, beyond a reasonable doubt, that the defendant, and no other person, committed the offense." And they were further charged that "the defendant is presumed to be innocent until, by legal evidence, his guilt is proven by the State, on whom rests the burden of proof; and if you have a reasonable doubt of the guilt of the defendant, as charged, fairly and naturally arising out of the entire evidence, or the want of it, you will give him the benefit of it, and acquit." Taking the charge as a whole, we are unable to discover any error, either of omission or commission, of which the appellant can complain.

We are unable to say that the verdict is without legal evidence to support it; and the jury having found the defendant guilty, and the court in whose presence the witnesses testified having refused a new trial, we find no legal grounds to disturb the action of the court below, and the judgment is affirmed.

*Affirmed.*